UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RICKY DEWAYNE EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-246-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Ricky Dewayne Evans filed this suit seeking judicial review of a decision of the Defendant denying his applications for Disability Insurance Benefits and Supplemental Security Income, and the United States District Judge transferred the case to the United States Magistrate Judge. Evans did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order of transfer, the undersigned files this "Report and Recommendation"and recommends that the District Court affirm the Commissioner's decision and dismiss Evans' claims.

**I.      Statement of the Case**

Evans claims he became disabled on January 10, 2005, when he was thirty-seven years old. (Tr. 14, 52-56.) He testified that he had previously worked as a restaurant manager, that he was last employed as a furniture mover, and that he quit working as a furniture mover after he suffered an injury to his right arm in January 2005. (Tr. 314-15,

317.) He claimed he suffered from problems related to his right arm injury and that he suffered from diabetes, lung problems, hypertension, blindness in his right eye, deafness in his left ear, and anxiety. (Tr. 64, 319.) He claimed he was unable to work because he was incapable of lifting more than ten pounds with his right arm, because he experienced dizziness and loss of balance, and because he experienced poor vision and hearing. (Tr. 64-65.) The Administrative Law Judge (ALJ) found that Evans had severe impairments but determined that he retained the Residual Functional Capacity (RFC) to perform sedentary work that would require only monocular vision. (Tr. 17.)

Evans contends the ALJ's RFC determination is not supported by substantial evidence and that he failed to resolve conflicts between the vocational expert's testimony and information contained in the Dictionary of Occupational Titles (DOT). Evans' contentions are without merit. The court has reviewed the administrative record and the arguments of both parties under the substantial evidence standard, 42 U.S.C. § 405(g), and has determined that the ALJ's decision is supported by substantial evidence and was reached through the correct application of legal standards.

## II.     The Determination that Evans Can Perform Limited Sedentary Work

Evans brings a number of arguments to support his complaint regarding the ALJ's RFC determination. He argues that the ALJ should have included restrictions related to his anxiety, hearing loss, and arm injury into his RFC and that he did not explain why he rejected evidence regarding those impairments.

2

In connection with his argument regarding anxiety, Evans claims Social Security Ruling 96-9p directs that the presence of mental limitations may significantly erode the occupational base of unskilled work. Evans is correct in this regard. According to Ruling 96-9p, a substantial loss in the ability to perform mental activities may significantly erode the occupational base of unskilled work; consultation with a vocational expert is therefore advisable. S.S.R. 96-9P, 1996 WL 374185 at * 9. The Ruling, however, is inapplicable to this case. The jobs the ALJ determined Evans could perform are jobs in the occupational base of semi-skilled sedentary work. (Tr. 18-19, 326.) The portion of Ruling 96-9p, on which Evans relies, relates to unskilled work. *See* S.S.R. 96-9P, 1996 WL 374185 at * 9. In addition, the evidence does not support a conclusion that Evans suffered from anxiety that would interfere with his ability to perform the mental demands of work. (*See* Tr.185-86, 216-17, 233-34.)

Evans' claims regarding his hearing loss are without merit. Evans testified that he did not wear a hearing aid and that none of his physicians had prescribed a hearing aid. (Tr. 316.) Significantly, he reported to Dr. Hood that he could not hear "normal conversation" with his left ear but that he was able to use his right ear to hear.[1] (Tr. 185; *See* Pl's Br. Ex. "A.") And at the hearing Evans did not indicate any difficulty hearing the ALJ or his attorney or conversing with the ALJ or his attorney, and the records indicate that

---

[1] The certified transcript from the Commissioner does not include the last page of Dr. Hood's assessment. Evans, however, provided the last page as an exhibit with his brief. The Commissioner did not object to the exhibit.

he worked for years despite hearing loss. (Tr. 71, 185, 311-29.) Substantial evidence supports the ALJ's determination that Evans' hearing loss would not restrict his ability to perform work.

In regard to his arm injury, Evans contends the ALJ failed to explain why he rejected an opinion from a physical therapist; opinions in a functional capacity evaluation form completed by physical therapist Paul Haley; and opinions from Dwight D. Hood, M.D.[2] These arguments do not require remand. The evidence, including the evidence from these sources, does not demonstrate that Evans' arm injury would preclude him from performing sedentary work. Evans reported to physicians on January 10, 2005, that a sleeper sofa fell from a moving truck and struck his right forearm. (Tr. 183, 185.) X-rays of his forearm and wrist showed no fractures and no dislocation, but he complained of pain and weakness thereafter as well as decreased range of motion and therefore underwent physical therapy. (Tr. 148-49, 160-61, 251.) On April 5, 2005, his physical therapist noted that Evans exhibited decreased range of motion in his right arm and that the overall strength in his arm was 3/5 as a result of pain. (Tr. 160.)

On May 17, 2005, Mr. Haley completed the functional capacity evaluation Evans claims the ALJ rejected. (Tr. 162-70.) Mr. Haley reported that Evans exhibited decreased

---

[2] Evans also argues that Ruling 96-9p directs that significant limitations in an individual's ability to handle and use both hands will result in a significant erosion of the unskilled sedentary occupational base. This argument must be rejected. Again, the portion of Ruling 96-9p that Evans relies upon addresses the impact of an individual's limitations upon the occupational base of unskilled sedentary work. *See* S.S.R. 96-9P, 1996 WL 374185 at * 8.

4

flexibility in his upper extremities and that his lifting capabilities were decreased by diminished right grip strength. (Tr. 170.) He also reported, however, that Evans was capable of pushing twenty pounds, pulling fifteen pounds, and lifting up to twelve to fifteen pounds occasionally. (Tr. 169-70.) Nothing in Mr. Haley's report conflicts with the ALJ's determination that Evans was capable of performing sedentary work; the ALJ did not, therefore, reject Mr. Haley's opinions. Sedentary work involves lifting no more than ten pounds occasionally. 20 C.F.R. § 404.1567(a) (2007).

Likewise, nothing in Dr. Hood's opinion conflicts with the ALJ's determination. Dr. Hood noted that Evans exhibited no muscle atrophy but that he had significantly decreased grip strength in his right hand and "marked weakness." (Tr. 186.) He reported that Evans would not be able to do work-related activities such as lifting, carrying or handling objects unless he could do so with his left arm and hand only. (Pl.'s Br. Ex. "A.") Dr. Hood's assessment is not inconsistent with the ALJ's conclusion that Evans could perform sedentary work. Even the complete loss of the ability to use one arm does not automatically render a claimant disabled. *See Robinson v. Celebrezze*, 326 F.2d 840, 841 (5th Cir. 1964) (citations and quotations omitted) ("it is common knowledge that a man with only one arm or leg, if not otherwise incapacitated, may do much valuable work and engage in many gainful occupations"); *see also Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000) (ALJ correctly determined that amputee could perform light work); 20 C.F.R. § 404.1567(a) (the regulations do not indicate that sedentary work would require the use of both arms).

The court must conclude that the ALJ's determination that Evans could perform

sedentary work is supported by substantial evidence. Sedentary work involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files and ledgers, and sitting, walking, and standing occasionally. 20 C.F.R. § 404.1567(a). There is no evidence that Evans had problems sitting for long periods or that he was incapable of standing and walking occasionally, and the medical evidence demonstrates he was capable of lifting ten pounds occasionally. Mr. Haley tested Evans abilities and determined that he could lift eight to fifteen pounds occasionally. (Tr. 169.) He reported that he believed Evans would be capable of lifting more than fifteen pounds if he used his left arm only but that the test protocol he administered did not allow that option. (Tr. 170.) Significantly, Evans testified that he is left-handed and that he could lift five pounds with his right arm. (Tr. 315, 324.) In fact, he claimed in application documents that he could lift up to ten pounds with his right arm. (Tr. 64.) Given that Evans was capable of lifting between five and ten pounds with his injured arm, and given that he did not suffer limitations in his dominant arm, it must be concluded that he was capable of lifting at least ten pounds and therefore capable of performing sedentary work.

### III.     The Determination that Evans Can Perform Work in the National Economy

At the hearing the ALJ posed a hypothetical question to the vocational expert in which he incorporated Evans' demographic information and residual functional capacity and asked whether such an individual would be capable of performing any jobs in the national economy. (Tr. 325-26.) Specifically, the ALJ asked the vocational expert whether, considering Evans monocular vision and skills acquired as a restaurant manager, there were

any jobs in the national economy at the sedentary level that Evans would be capable of performing. (Tr. 326.) The vocational expert identified the jobs of information clerk, schedule clerk, and invoice clerk. *Id.*

Evans claims that the vocational expert testified that the identified jobs would not require frequent handling and reaching but that the DOT describes the jobs as requiring frequent handling and reaching, frequent hearing, and near acuity. Evans contends that because the vocational expert's testimony conflicts with the DOT, the ALJ was required to resolve the conflict and that the Report and Recommendation in *Lopez v. Astrue*, 5:07-CV-169-BG, supports his contention.

Evans' arguments do not require remand. First, even if the court were to assume that the vocational expert's testimony conflicted with evidence in the DOT, the type of conflict Evans alleges is characterized as an indirect conflict that need not be resolved. *See Carey*, 230 F.3d 146-47. The DOT may describe the jobs the vocational expert identified as jobs requiring frequent handling and reaching, but there is no requirement that an individual be capable of bilateral frequent handling and reaching, and even if the DOT indicates the jobs require the ability to see at close distances, there is no requirement in the DOT that the worker be capable of seeing at close distances with both eyes. *See* Dictionary of Occupational Titles, Clerical and Sales Occupations, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02B.htm (last visited June 11, 2008); *see id.*, Components of the Definition Trailer, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM (last visited June 11, 2008).

Further, it is immaterial whether the jobs the vocational expert identified are listed in the DOT as requiring frequent handling and reaching, the ability to hear well, or near acuity. Any conflict is immaterial because the ALJ did not find that Evans' hearing and visual problems would limit his ability to work or that Evans was incapable of frequent handling and reaching and did not include such limitations in his RFC. (Tr. 17-19.) The ALJ's determinations are supported by substantial evidence. As already noted, Evans was capable of hearing normal conversations, and there is no evidence that he was unable to see at close distances. (Tr. 185.) In fact, Dr. Hood noted that although Evans was blind in one eye, he used his other eye for reading. (Pl.'s Br. Ex. "A.") There is no evidence that Evans was limited in his ability to frequently reach and handle objects. (Tr. 165.)

Finally, contrary to Evans' contentions, the Report and Recommendation in *Lopez* does not support his argument. While the alleged conflicts in Evans' case are indirect conflicts, the conflicts in *Lopez* were direct conflicts, and the conflicts called into question whether the ALJ had demonstrated that Lopez could perform the work the vocational expert identified. In *Lopez* the ALJ asked the vocational expert to identify jobs that were light in exertional level and that the claimant could perform with a concentration deficit, restrictions in overhead reaching, and the inability to engage in repetitive use of the hands. The vocational expert identified three jobs and testified that all three jobs required only occasional use of the hands. According to the DOT, however, all three jobs involve frequent/repetitive use of the hands, and one of the jobs is performed at the medium to heavy exertional level. The conflict between the DOT and the vocational expert's testimony was

8

therefore a direct conflict, and resolution of the conflict was necessary in order to ascertain whether Lopez could, in fact, perform the jobs at issue. Such a situation is not present in this case. The ALJ determined that Evans' ability to perform sedentary work was limited only by his ability to see with one eye. The vocational expert identified jobs that would accommodate the ALJ's RFC, and the definitions of the jobs in the DOT do not conflict with the vocational expert's testimony.

## IV. **Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's final decision and dismiss this case with prejudice.

## V. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: June 24, 2008.

_____
NANCY M. KOENIG
United States Magistrate Judge